674 So.2d 1301 (1995)
Kimberly ROBBS, a/k/a Kimberly Hobbs
v.
STATE of Alabama ex rel. John D. WHETSTONE.
2940447.
Court of Civil Appeals of Alabama.
August 18, 1995.
Rehearing Denied September 29, 1995.
Ronnie L. Williams, Mobile, for Appellant.
Jeff Sessions, Atty. Gen., and John J. Park, Jr., Deputy Atty. Gen., for Appellee.
L. CHARLES WRIGHT, Retired Appellate Judge.
This is an appeal from a judgment directing the forfeiture of a 1984 Toyota Supra automobile.
In March 1994 the State filed a complaint against Kimberly Robbs, a/k/a Kimberly Hobbs (Robbs), and her brother, James Derrell Hobbs, seeking forfeiture of $479 in U.S. currency and a 1984 Toyota Supra automobile. Judgment by default was entered in favor of the State. The default judgment was set aside as to any interest that Robbs had in the automobile. The default judgment *1302 remained against Hobbs. He did not contest the forfeiture. Following oral proceedings, the Circuit Court of Baldwin County ordered the forfeiture of the automobile. Robbs appeals.
The record reflects that on February 18, 1994, Hobbs was arrested at a pool hall in Fairhope, Alabama. When he was arrested, he had 37 pieces of crack cocaine in his pocket; $479, including a marked $20 bill; and a set of car keys. The set included the key to the Toyota, which was parked directly in front of the pool hall.
Steve Griffis, a police officer assigned to the narcotics division, testified that he was familiar with Hobbs and that Hobbs had the reputation of being involved in the possession and sale of drugs. Griffis considered Hobbs to be "a pretty good sized drug dealer," and Griffis had been investigating Hobbs for "probably a good year, year-and-a-half."
Griffis was the arresting officer on February 18, 1994. The arrest took place after an informant purchased drugs from Hobbs. Following the arrest, Griffis impounded the Toyota. The personal belongings in the automobile belonged to Hobbs. The only thing with Robbs's name on it was the tag receipt. Griffis did not find any drugs or drug paraphernalia in the car.
Griffis lived in the community and testified that he always saw Hobbs driving the Toyota. He never saw Robbs drive the Toyota. He testified that Robbs drove a white Oldsmobile. Griffis testified, "I interviewed [Hobbs] at the jail the night I arrested him, and he stated that the car was his, that he had to buy the car in [Robbs's] name but the car actually belonged to him." The State introduced into evidence a tag receipt for the Toyota, which had been signed by Hobbs.
Robbs testified that her brother, Hobbs, gave her more than $7,000 to buy the Toyota. She selected the automobile without help from Hobbs. The $7,000 was derived from accident settlement proceeds that Hobbs had previously received. Robbs also owned a 1980 Oldsmobile. She did not drive the Toyota to work everyday. Hobbs had permission to drive the car "when he needed to," but Robbs said the permission was not blanket.
Robbs testified that on February 18, 1994, Hobbs was already at the pool hall when she arrived in the Toyota. She was ready to leave, but he wanted to stay. She gave him the keys to the Toyota and she walked home. Hobbs testified that he was going to drive the Toyota home. He claimed that the cocaine belonged to someone else, that it had been handed to him by a third person, and that "[t]he guy that brought it to me and told me this guy hid it, I was planning on giving it back to him before I left there," but the intended recipient was not in the pool hall.
David Wilson, a police officer, testified that he arrested Hobbs in December 1993. He stated that prior to the arrest, he noticed Hobbs driving around a neighborhood in the Toyota. It appeared to him that Hobbs was "casing" the neighborhood. Wilson stopped Hobbs. Hobbs had no identification with him. Hobbs told Wilson that he was lost in the neighborhood and that he was trying to get back to the construction site where he was working. Wilson testified that Hobbs was not appropriately dressed to be doing construction work.
Wilson arrested Hobbs on an outstanding warrant. He searched the Toyota and found crack cocaine in the locked glove compartment. Hobbs eventually pleaded guilty to possession of crack cocaine.
Robbs knew that her brother had been arrested in 1993 on a drug charge while driving the Toyota. Even after the arrest, she continued to let her brother drive the Toyota "when he needed to drive it," which was "[m]aybe three times a week."
Robbs asserts that the trial court erred in ordering the forfeiture of the Toyota.
In a § 20-2-93, Code 1975, forfeiture proceeding, the State may establish a prima facie case by showing that the item to be forfeited was used, or intended to be used, in violation of the Alabama Uniform Controlled Substances Act. Culpepper v. State, 587 So.2d 359 (Ala.Civ.App.1991). The standard of that proof is reasonable satisfaction. Agee v. State ex rel. Galanos, 627 So.2d 960 (Ala.Civ.App.1993). Once a prima facie case *1303 is established by the State, an owner or lienholder of the seized property may prevail if he or she proves that the act was committed without his or her knowledge and that he or she could not have obtained that knowledge by the exercise of reasonable diligence so as to have prevented the illegal use. Culpepper; § 20-2-93(h), Code 1975.
When evidence is presented ore tenus, the judgment of the trial court is presumed correct and will be affirmed if it is supported by competent evidence, unless it is shown to be palpably wrong. Culpepper.
In ordering that the automobile be forfeited, the trial court entered the following judgment:
"1. The Court finds from the evidence that the subject 1984 Toyota Supra ... was used to facilitate a violation of the Alabama Controlled Substances Law and is due to be forfeited to the State.
"2. The Court finds and determines from the evidence that the Defendant, Kimberly Robbs, a/k/a Kimberly Hobbs, is the owner of the 1984 Toyota Supra. The Court further finds that the Defendant, Kimberly Robbs, a/k/a Kimberly Hobbs, had knowledge that the 1984 Toyota Supra was being used to facilitate a violation of Alabama Controlled Substances Law. The Defendant, Kimberly Robbs, failed to meet her burden to prove that the violation of Alabama Controlled Substances Statutes [was] committed without her knowledge or consent and/or that she could not have obtained by the exercise of reasonable diligence, knowledge of the intended illegal use of her property and prevented such use."
We find that the State failed to establish a prima facie case to support the forfeiture of the Toyota. On February 18, 1994, the night the Toyota was seized, there were no drugs found in the automobile. Hobbs testified that while he intended to drive the car home, he also intended to return the cocaine to the alleged "third party" prior to returning home. The State failed to present any evidence that on February 18, 1994, the Toyota was used, or was intended to be used, in violation of the Controlled Substances Act.
The trial court found that the Toyota "was used to facilitate a violation of the Alabama Controlled Substances Law." We are not "reasonably satisfied" that the evidence supports such a finding. The State failed to present a prima facie case. A resolution of Robbs's innocent owner issue is therefore unnecessary.
The judgment of the trial court is reversed. The cause is remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED WITH DIRECTIONS.
ROBERTSON, P.J., and YATES, J., concur.
THIGPEN, J., concurs specially.
MONROE and CRAWLEY, JJ., dissent.
THIGPEN, Judge, concurring specially.
Based on the trial court's finding that Robbs is the owner of the vehicle, I concur specially with the opinion reached by the majority. The majority states that "[t]he State failed to present any evidence that ... the Toyota was used, or was intended to be used, in violation of the Controlled Substances Act." (Emphasis added.) I concur with that decision.
My review of the record, however, indicates that there was ample evidence from which the trial court could have determined that Hobbs was, in fact, the owner of the vehicle, and that the title was merely a subterfuge. See Felder v. State, 515 So.2d 17 (Ala.Civ.App.1987). For example, all personal items in the vehicle belonged to Hobbs, Hobbs was seen driving the car frequently, Hobbs gave Robbs the money to purchase the car, and Hobbs purchased the tag for the vehicle. Also, the arresting police officer testified that Hobbs "stated that the car was his, that he had to buy the car in [Robbs]'s name but the car actually belonged to him."
Therefore, based on the trial court's finding after an ore tenus proceeding, I am *1304 constrained to concur with the rationale of the majority. If, however, the trial court had found that the title was merely a subterfuge, I would have affirmed based on the default judgment entered against Hobbs.
CRAWLEY, Judge, dissenting.
Because I would affirm the trial court's judgment on all points, I must respectfully dissent.
The threshold question in this case is whether the State presented sufficient evidence to establish that James Derrell Hobbs used the vehicle, or intended to use it, to facilitate the commission of a drug offense. The trial court found that it did, and that finding is clearly and amply supported by the evidence.
Hobbs was arrested at a pool hall; he had in his pocket 37 rocks of crack cocaine and $479. He admitted that he was planning to drive the car home from the pool hall. He claimed, however, that he intended to return the cocaine to some third party before he left the pool hall for home. In light of the facts that Hobbs had been seen driving the car on numerous occasions, that he had a prior arrest for possession of drugs and that at the time of that arrest, drugs were found in the car, and that he had a reputation in the community as a drug dealer, the trial court was authorized to disbelieve Hobbs's testimony that he was going to dispose of the cocaine before he set foot in the car.
To conclude, as the majority does, 674 So.2d at 1303, that "[t]he State failed to present any evidence that on February 18, 1994, the Toyota was used, or was intended to be used, in violation of the Controlled Substances Act," is to disregard the following well-established principles:
"Intent, being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence."
Pumphrey v. State, 156 Ala. 103, 47 So. 156 (1908); Hamilton v. State, 283 Ala. 540, 219 So.2d 369, cert. denied, 396 U.S. 868, 90 S.Ct. 134, 24 L.Ed.2d 121 (1969). Furthermore, circumstantial evidence may be sufficient, in conjunction with other facts and circumstances which tend to connect the accused with the commission of the crime, to establish an offense. Carroll v. State, 627 So.2d 874 (Ala.1993); Dolvin v. State, 391 So.2d 133 (Ala.1980).
The second question is whether Kimberly Robbs was the owner of the vehicle. The trial court found that she was, and that finding, as Judge Thigpen notes, is also supported by oneif not the onlyreasonable view of the evidence.
The third question, which neither the majority nor Judge Thigpen finds it necessary to reach, is whether the State proved, prima facie, that the drug offense was "committed... with the knowledge or consent of [Kimberly Robbs]." See Ala.Code 1975, § 20-2-93(h). The trial court found that it did, and that finding, like the previous two, is also supported by the evidence. Ms. Robbs conceded that she knew of her brother's earlier arrest and conviction for possession of drugs that had been found in the Toyota, yet she continued to let him use the Toyota when he needed it. Although she was pregnant, she walked home from the pool hall on the night in question so that her brother would have the car available when he was ready to leave the pool hall.
All of the trial court's findings are supported by competent evidence and are due to be upheld.
MONROE, J., concurs.